**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**UNITED STATES OF AMERICA,**
*ex rel.* **MITCHELL D. POTTERF IV,**

           **Plaintiff-Relator,**

    **v.**                              **Case No.: 2:15-CV-701**
                                           **JUDGE SMITH**
                                         **Magistrate Judge Deavers**

**NATIONAL STRENGTH AND
CONDITIONING ASSOCIATION,** *et al.*,

           **Defendants.**

**OPINION AND ORDER**

This matter is before the Court upon the Motion to Dismiss (Doc. 11) of Defendants, National Strength and Conditioning Association and the Journal of Strength and Conditioning Research. Plaintiff-Relator, Mitchell Potterf ("Plaintiff") moved to strike Defendants' exhibits from the Motion to Dismiss (Doc. 27). In a separate filing, Plaintiff responded to Defendants' motion and moved for leave to file an amended complaint (Doc. 28). Defendants opposed Plaintiff's request for leave and replied in support of their motion (Doc. 29). Separately, Defendants opposed Plaintiff's Motion to Strike (Doc. 30). Plaintiff failed to timely reply in support of his Motion to Strike. Accordingly, all of the motions are ripe for review. For the following reasons, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's request for leave and Motion to Strike are **DENIED**.

## I.     BACKGROUND

This case arises from a 2012 study and the resulting article (the "Study") written by Ohio State University ("Ohio State") researchers, including, *inter alia*, Steven T. Devor, P.h.D. ("Dr.

Devor"). The article, titled "Crossfit-based high-intensity power training improves maximal aerobic fitness and body composition," concerned participants in a study at Plaintiff's gym, Ohio Fit Club. (Doc. 28-1, Am. Compl. at ¶ 20, Ex. 1). Plaintiff is the owner of Ohio Fit Club, which uses an exercise regimen called CrossFit to train its clientele. The Study measured workout participants both at the beginning and end of a ten-week period of daily CrossFit workouts. (Doc. 1, Compl. at ¶ 22). Eleven of the fifty-four participants dropped out of the Study before reaching the "test-out" stage, which was conducted at the completion of the ten-week period. (*Id.* at ¶ 24). The Study noted that of the eleven participants who failed to test-out, nine withdrew due to "injury or overuse." (*Id.* at ¶ 25). In 2012, the Defendants, National Strength and Conditioning Association ("NSCA") and its online journal, the Journal of Strength and Conditioning Research (the "Journal") published the Study in the Journal. (*Id.* at ¶ 27). Plaintiff alleges that the Study contained a false statement (the "Statement") pertaining to the subjects' purported injuries and overuse. (*Id.* at ¶ 26).

Plaintiff alleges that Defendants were made aware of the Statement's false nature, but neglected to issue a retraction or correction. (*Id.* at ¶ 31) The proposed Amended Complaint alleges an erratum was issued on September 11, 2015—roughly three years after the Study's original publish date. (Doc. 28-1, Am. Compl. at ¶ 31). Due to Defendants' prolonged failure to correct or retract the Statement, Plaintiff brought the instant qui tam lawsuit on behalf of the United States against the NCSA and the Journal on February 24, 2015, alleging violations of the False Claims Act ("FCA") under 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B). (*See* Doc. 1, Compl. at ¶ 17). In addition to the instant lawsuit, Plaintiff filed a nearly identical complaint bringing claims against Ohio State and Professor Devor on the same day. *See United States of America ex rel. Mitchell Potterf IV v. The Ohio State University*, No. 15-cv-703, at Doc. 1,

Compl. (S.D. Ohio) (Smith, J.).  Plaintiff also filed a lawsuit against Ohio State in the Ohio

Court of Claims.  *See Potterf IV, et al. v. Ohio State Univ.*, Ohio Court of Claims Case No. 2014-

00328 (filed March 31, 2014).  Last, CrossFit, Inc. filed a lawsuit against Defendants in

California. *See CrossFit, Inc. v. Nat'l Strength and Conditioning Assoc.*, 14 CV 1191 (S.D. Cal.)

(filed May 12, 2014).

## II.    STANDARD OF REVIEW

Defendants bring this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, alleging that Plaintiff has failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short

and plain statement of the claim" showing that the pleader is entitled to such relief.  Fed. R. Civ.

P. 8(a)(2).  To meet this standard, a party must allege sufficient facts to state a claim that is

"plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  A claim will be

considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

A*shcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the

foregoing standards.  In considering whether a complaint fails to state a claim upon which relief

can be granted, the Court must "construe the complaint in the light most favorable to the

plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

plaintiff."  *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d

829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to

threadbare recitals of a cause of action's elements, supported by mere conclusory statements."

*Iqbal*, 556 U.S. at 663.  Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice.  *Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

## III.  DISCUSSION

Defendants moved to dismiss this case, arguing that Plaintiff did not meet the stringent pleading standard required under Rule 9(b) of the Federal Rules of Civil Procedure for fraud claims.  Plaintiff moved to strike the exhibits attached to Defendants' motion and also responded in opposition to Defendants' motion.  Plaintiff's response also requested leave to file an amended complaint.  Plaintiff argued that the Complaint meets the pleading standards required under Rule 9(b) and that any doubt would be removed by the filing of the Amended Complaint.

### A.  Motion to Dismiss

"A complaint stating a violation of the FCA constitutes an 'averment[] of fraud' for purposes of Rule 9(b), and a complaint alleging such a claim must state the circumstances surrounding the FCA violation with particularity."  *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 642–43 (6th Cir. 2003) ("*Bledsoe I*") (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)).  Rule 9(b) is designed to give defendants "notice of the specific conduct with which they were charged," to reduce exposure "to fishing expeditions and strike suits," and to protect them "from spurious charges of immoral and fraudulent behavior."  *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 510 (6th Cir. 2007) ("*Bledsoe II*").  To comply with Rule 9(b), Plaintiff "must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the

defendants; and the injury resulting from the fraud." *Bledsoe I* at 643 (internal quotations omitted).

The FCA, as amended in 2009, provides liability for any person who: a) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;" or b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."   31 U.S.C. § 3729(a)(1).   Plaintiff brings claims under both §§ 3729(a)(1)(a) and 3729(a)(1)(b).

A review of the Plaintiff's Complaint against Ohio State and Dr. Devor in this Court makes clear that Plaintiff made identical allegations against Ohio State and Dr. Devor and the NSCA and the Journal.  *See United States ex rel. Potterf IV v. The Ohio State Univ.*, No. 15-cv-703, at Doc. 1, Compl.  Thus, it is easy to see why Plaintiff's allegations make little sense with regard to the Defendants in the instant case.   For example, the Complaint alleges that the Defendants approached Plaintiff to do the study, proposed the procedures for the Study, did the test-in and test-out procedures for the Study, made conclusions within the Study, and ultimately, caused themselves to publish the Study.  (Doc. 1, Compl. at ¶¶ 20, 21, 24, 25)[1].  What remains unclear is if—or when—Defendants submitted any false or fraudulent information as a basis for payment from the United States Government.

In order to have a claim under either provision of the FCA, Plaintiff must allege that Defendants made false or fraudulent statements to the government in order to obtain payment. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504–05 (6th Cir. 2008).  "A plaintiff must identify the specific claims that were submitted to the United States . . . ." *United States ex*

---

[1] Plaintiff's Amended Complaint makes clear that these allegations actually refer to Ohio State and Dr. Devor.  (*See generally*, Doc. 28-1, Am. Compl.).

*rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 446 (6th Cir. 2008) (internal quotations omitted).

Plaintiff alleges that the claims presented to the government in this case were applications for NIH grants in 2012 and 2013.  (Doc. 1, Compl. at ¶ 30).  Plaintiff claims that Defendants obtain NIH grants "on the basis of their reputation and results in conducting research and publishing studies."  (Compl. at ¶ 28).  Further, Plaintiff alleges, "[t]he study underlying this case is one of the studies the Defendants relied upon in furthering its reputation and obtaining further grants from the NIH."  (*Id.*).  However, that Defendants relied on their reputation to obtain grants does not create a cause of action under the FCA.

Plaintiff's Complaint alleges that the Statement was incorrect, and therefore, asks the Court to assume that Defendants relied on the falsity of that specific statement to falsely bolster their own reputation.  Notably, Plaintiff makes no allegation that the Statement had any effect on the methodology, the quality of the research, the ultimate conclusions of the article, or Defendants' reputation.  (*See generally* Doc. 1, Compl.).  Requiring more assumptions, Plaintiff asks the Court to assume Defendants' reputation is in fact false and that Defendants in turn relied on the falsity of their reputation in order to apply for NIH grants.  The Court will not make those assumptions when the Plaintiff must plead fraud with specificity.  *Marlar*, 525 F.3d at 448 n.3. Plaintiff does not allege that Defendants' reputation has suffered as a result of the Statement being published, that Defendants alleged representation of its reputation was false when presented to the NIH, or that Defendants made any mention of the Study when applying for NIH grants.

Plaintiff's failure to allege that Defendants made false statements to the NIH is fatal to his FCA claims under Rule 9(b).  The Complaint also fails to allege with specificity the false

statement Defendants relied upon in a request for payment from the United States.  For the

foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss the Complaint.

**B.      Motion for Leave**

Plaintiff also moved this Court for leave to file an Amended Complaint pursuant to Rule

15(a) of the Federal Rules of Civil Procedure.  Plaintiff argues that the necessary information is

in the hands of the Defendants but fails to explain why the NIH is not subject to Freedom of

Information Act requests for their records, including grant awards and applications.  Defendants

ask this Court to deny Plaintiff's Motion for Leave on the basis that the amendment would be

futile because the Amended Complaint does not comport with Rule 9(b) of the Federal Rules of

Civil Procedure.

Other than minor changes to certain paragraphs, there are no material differences

between Plaintiff's original Complaint and the Amended Complaint.  Notably, the Amended

Complaint actually removes Plaintiff's allegation that Defendants applied for and received NIH

grants in 2012 and 2013.  (*See* Doc. 1, Compl. at ¶¶ 29, 30).  However, Plaintiff continues to

assert that Defendants applied for and obtained grants from the NIH based on the Study.  (Doc.

28-1, Am. Compl. at ¶ 28).  Added to the proposed Amended Complaint are the following

paragraphs:

> 29. Additionally, the Defendants publish [sic] take advantage of additional
> financial benefits from NIH in that they cross-publish all of their peer-
> reviewed articles, including the article at issue in this case, in the NIH's
> journal "PubMed/Medline" search engine and database.
>
> 30. The Article containing the false/fraudulent data was published by the
> Defendants on PubMed/Medline.
>
> 31. The Defendants continued to allow the article to be published, both in their
> Journal and on PubMed/Medline, without retraction, and to be circulated on a
> world-wide basis, through September 11, 2015, when they issued a retraction
> in the form of an Erratum, and withdrew a portion of the false/fraudulent
> data.

(Doc. 28-1, Am. Compl. At ¶¶ 29–31).

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give[]" leave to amend "when justice so requires."  *See* Fed. R. Civ. Pro. 15(a); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).  However, this is not to say that leave to amend should always be granted.  Some circumstances such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment may be grounds for denial.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Ultimately, though, whether to grant or deny leave to amend a pleading is within the discretion of the district court.  *Id*.

Determining whether a proposed amendment is futile requires a single straightforward question: can the claim, as amended, survive a motion to dismiss?  *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993) ("This Circuit has addressed the issue of 'futility' in the context of motions to amend, holding that where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment."); *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980) ("It is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss.").  If the answer is no, the amendment is futile and the Court has grounds to deny leave.  To address the pending motion, then, the Court must consider each claim set forth in Plaintiff's proposed Amended Complaint and determine whether any of his claims, as amended, could survive a motion to dismiss, i.e., state a claim upon which relief could be granted.

Plaintiff's only new allegation is that the Defendants take advantage of financial benefits from the NIH when Defendants publish peer-reviewed articles through the NIH.  (Doc. 28-1,

Am. Compl. at ¶ 29).  This allegation does not pass muster under Rule 9(b) because, even if true, it is not an allegation that the Defendants used the Statement in the Study to request benefits from the government or that Defendants submitted a claim for payment to the government as would be required by the FCA.  Instead, it is an allegation that Defendants received a financial benefit when Defendants published articles with the NIH.  Even assuming the allegation is true, Plaintiff does not allege that Defendants submitted this article to the NIH in order to receive the benefit of publication rights or financial benefits as would be required under the FCA.  Instead, Plaintiff's Amended Complaint simply claims that Defendants cross-published all of their articles with the NIH.  Notably, Plaintiff's Amended Complaint does not allege that the benefits received by Defendants are even from the NIH.  Plaintiff's failure to allege what benefits Defendants received as a result of the alleged fraudulent behavior does not meet the strict pleading standard of Rule 9(b).

Further, Plaintiff's section titled "Defendants' Liability," casts doubt on Plaintiff's new allegation of publication benefits because Plaintiff again presents only one substantive allegation:

> 32.  By virtue of the acts described above, Defendants knowingly (a) submitted and continue to submit and/or (b) cause and/or continue to cause to be submitted false or fraudulent claims to the United States Government for NIH grants based upon the quality and accuracy of its research and academic publications.

 (Doc. 28-1, Am. Compl. at ¶ 32).

The allegation in paragraph 32 of Plaintiff's Amended Complaint suffers from the same deficiencies as the original Complaint, namely, that the allegation of fraud is not specific enough to satisfy the burdens of Rule 9(b).  As stated above, Plaintiff "must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the

fraudulent intent of the defendants; and the injury resulting from the fraud." *Bledsoe I* at 643 (internal quotations omitted).

In the Amended Complaint, Plaintiff actually removes the dates of his allegations, alleging simply that Defendants applied for and obtained grants. By comparison, the original Complaint specifically alleged that Defendants obtained grants in 2012 and 2013. It is difficult to comprehend how Plaintiff's removal of dates satisfies a heightened standard requiring plaintiffs to plead the time of alleged fraudulent activity. Plaintiff alleges the article was improperly filed in 2012 but not corrected until 2015. (Doc. 28-1, Am. Compl. at ¶¶ 27, 31). Plaintiff does not provide a single date—or even a year—when the allegedly fraudulent communication was made to the United States. The Court finds that Defendants have the right under Rule 9(b) to a more precise claim than a three-calendar-year period.

In sum, Plaintiff's Amended Complaint appears to be no more than a fishing expedition that does not meet the stringent pleading standards under Rules 12(b)(6) or 9(b). Accordingly, the Court **DENIES** Plaintiff's request for leave to file the Amended Complaint.

## C.     Motion to Strike

Plaintiff also moved this Court to strike Defendants' Exhibits 1, 2, and 3. Plaintiff argued that the exhibits could not be considered on a Motion to Dismiss, but made no argument or reference to Defendants' request that this Court take judicial notice of these exhibits. Regarding Exhibit 3—the complaint in *Mitchell Potterf IV v. The Ohio State University*—it is well-settled in this Circuit that judicial notice of other court proceedings is proper when faced with a Rule 12(b)(6) motion. *See e.g. Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). Plaintiff's Motion to Strike on this issue is clearly without any basis in law. As the Court has excluded Exhibits 1 and 2 from its consideration in making this ruling, Plaintiff's Motion to Strike those

exhibits is moot.  *See* Fed. R. Civ. P. 12(d).  Accordingly, the Court **DENIES** Plaintiff's Motion to Strike Exhibits 1, 2, and 3.

## IV.    CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED**.  Additionally, Plaintiff's request for leave to amend and Motion to Strike are **DENIED**.  The Clerk shall **REMOVE** Documents 11 and 27 from the Court's pending motions list.  The Clerk shall enter final judgment in favor of Defendants and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

**   /s/ George C. Smith                   **
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**